Docket 24-2057. Counsel, please proceed when you are ready. Thank you, Your Honor. If I may have a second. Good morning, Justices. My name is Brock Benjamin, and I represent, along with Mr. Marshall Ray, who's here, represent Jeffrey Clay. And we're here asking the court to reverse his conviction based upon several evidentiary issues. And I'll focus on the three issues, but mainly on starting with issue one. And that was where, in his response brief, the United States says Clay tricked Doe One into his car by offering her a ride. The defendant had filed a motion in limine at the very beginning asking to admit evidence under 412. And while it's not argued this way in the brief, essentially the issue there was that we were arguing that it was a constitutional reason to allow that admission because it doesn't fall under one of the two main reasons there. But that evidence was simply evidence that would explain and counter her testimony that she had hitched a ride from an individual at a bus stop in a, for lack of a better term, a bad part of El Paso and would put the evidence of consent that she got into the car into evidence with documentary evidence. I would submit that one way that this... What shows consent to get in the car and get a ride? Yes, Your Honor. What other consent does it show? Well, Your Honor, but it explained the consent to get in the car and get a ride makes the story by Mr. Clay make sense and puts him in a place where, if he's a john picking up somebody for prostitution, that makes sense as opposed to simply he was there picking me up after I left the bar with my husband. And I would submit that what... In thinking about this, the way that this makes more sense is having tried many drug cases. In a drug case, the United States puts a cooperator on the stand and says, you've been convicted and you were selling drugs and you were doing X, Y, Z. Here, the narrative would have switched dramatically had the United States put Jane Doe 1 on the stand and said in her direct testimony, you have been convicted of prostitution, but this day you were not acting or you were simply looking for a ride. That would have styled this testimony distinctly different than shifting... Okay, so you're saying that primarily that it would be used to challenge her credibility. Yes, Your Honor. So in other words, if you're a sex worker, you're incredible. No, Your Honor. You have to be believed. Excuse me, I didn't mean to interrupt, Your Honor. No, that's not... It's to challenge the statement that the government led with in its response. And I believe it's sentence number two, where the government's position was that Clay tricked Doe 1 into his car. And that was, it's the credulous idea that this is what they're leading with. We're not arguing about whether the sex worker, because she's a sex worker, is credible or not credible. What we're dealing with is the framework and the argument that is placed in front of the jury by, we call it removing the sting, where when you place your witness on the stand, you bring out the bad facts first. That's challenging just plain credibility. Of the getting in the car at a bus station at night with a strange white man, Your Honor. And that's the issue that is the credulous, or am I taking this car and going to a friend's house? Because that's the issue that the prostitution conviction would have put into play, was the idea that, much like a cooperator, a, the cooperator is a... How does that in any way reflect on consent to have sex? It doesn't, Your Honor. It doesn't? It doesn't. So it is plain challenging the credibility of a sex worker because she's a sex worker. It's plain challenging the credibility of the case that the United States is putting forth through that testimony, Your Honor. It indicted my client with a, the 20, the Mann Act violation, which was taking a individual across state lines for prostitution purposes. And that was what Mr. Clay admitted to in his testimony. But so the issue when we're forcing, when the district court precludes the 412, the documentary evidence, it shifts the narrative and forces Mr. Clay to testify. And the only thing he gets to say is, as the individual charged, I am credible or not credible. And we're not allowing the credibility to be challenged in a different way. Is this all of the evidence that you wanted, the conviction, that's it? Correct, Your Honor. And that was what was in the motion in limine was the ability to bring that out. It was a, it was not an issue that was challenged by the government other than the admission of it. It wasn't, it wasn't, we're not arguing about facts or whether it exists or not. We're just arguing about the, the coming in. And its relevance is what? Its relevance is explaining why a bus stop, a stranger would get in a car with a white male. And in a dark part of town after, because her story was, I left, I had an argument with my husband. I went out, I was leaving. And so what you're hoping to prove with that is that it was a consensual encounter. It was a consensual encounter between the two of them as opposed to what was presented, which was trickery to get into the vehicle and travel. Okay, a consensual encounter for prostitution. Correct, Your Honor. That's what you're trying to prove. Yes, Your Honor. So it's not credibility. I can't tell what you're saying. It scares me when people tell me that, Your Honor. I apologize to the court. But what I'm saying is that this case rose and fall on the idea of Jeffrey Clay's defense of I went to South El, I went to South El Paso and picked up a prostitute and I took her to my house in Anthony, New Mexico. That was count two. That's what he was essentially admitted to and he was denying the kidnapping count. He didn't admit that. Otherwise he would have pleaded guilty. Your Honor, I've actually placed myself in the position where a client should stand up and plead to a different count. But that's not what happened. His testimony said that that's what happened and it wasn't very articulate. But that is where that was going, Your Honor. It was the defense position. But the central issue here is that the kidnapping. Okay, so I'll let you go on a little bit. So there was consent to prostitution. That doesn't mean there was consent to kidnapping. It doesn't mean there was consent to an aggravated assault. It doesn't mean there was a consent to anything like that. A prostitute does not consent to being taken across state lines. A prostitute does not necessarily consent to an aggravated handcuffing event. Isn't that true? A hundred percent, Your Honor. Although I would say there was a jury question about whether if her consent was initial at the beginning, if she changed her mind, would that still be a kidnapping? And the answer to that is clearly yes. You can change your mind. But that goes back to the idea that the narrative that is formed when the district court constricts what comes in and how it comes in changes much like with a cooperator where you would say that somebody is not, it doesn't have a conviction or has a conviction. Mr. Benjamin, when you first started out this morning, you said I'm going to take a different approach than the briefs, correct? Argument-wise is what I meant, Your Honor. I apologize. Well, yeah. Well, this whole thing you've been arguing for the past nine minutes or so is something that really wasn't pressed in your briefs, correct? Your Honor, I would disagree. Issue one was Mr. Clay giving his defense of consent. All right. Go ahead. I'm just trying to piece it. I'm trying to piece what you're saying. Is it this, that the prostitution conviction would have made the jury more likely to believe that it was a consensual prosecution encounter, and if they believed that, it would have been less likely to believe that there was trickery or anything that would support the kidnapping charge because they were just driving off to complete the transaction? Yes, Your Honor. That's your position? That's it, Your Honor. Do you have any law? Because, of course, 412 is a barrier for you and has a lot of societal purpose behind it. Do you have any law? And I can see this is different. This is a different sort of a situation. Do you have any law that says a conviction is different because then you're not dragging someone's name through the mud and raising all kinds of allegations about them that they may not want shared and may not even be true, but you're dealing with a hard and fast conviction, a piece of paper that says you were convicted of prostitution. I'll agree with you that seems a little different, but do you have any authority that says it is? I don't, Your Honor. We cited the United States v. A.S. that talks about the rule pitting societal roles, embarrassment of the victim. But I would suggest that Mr. Clay here, in admitting to prostitution, is suffering the same embarrassment as somebody who has a judicial public record for that is what I would respond to that. But I don't have a specific cite to answer the court on that. Your Honor, issue three was our challenging of the limitation on impeachment by the district court, where the district court prevented Mr. Gray, defense counsel, from going into and challenging the complainant based upon the fact that her statement was not under oath. Her prior allegation from when she was a child was not under oath. You're talking about T.V.? T.V., yes. Okay, so you've moved on to the 2421 charge. I did, Your Honor. I apologize. Which, as I understood it, you were a moment ago conceding. And so if indeed there was plenty of evidence to support that charge on your theory that it was prostitution, why do we even care about T.V.? Because what came in under T.V. was very violent allegation of a sexual assault that should not have been admitted under the government's charged acts. Well, it didn't help convict, or it wasn't needed to convict for 2421, according to you. Correct, Your Honor. But it's extremely harmful and prejudicial on the kidnapping charge. Is it? Why? Your Honor, having your stepdaughter come in and testify that you were raped and you were raped so bad that you were bleeding, when the issue there was that was not in any of the prior statements, is there's a sexual assault, Your Honor, and then I would suggest that there's a very violent, vulgar sexual assault. So your position is that it was important because then the jury would be more apt to believe that what happened at Mr. Clay's house was rape? Yes, Your Honor. Now let me ask you this question, which is the big one for me, and that is, does Mr. Clay have to intend to rape before he crosses that New Mexico line? No, Your Honor, because for count two, or for count one, Your Honor, I apologize. I'm talking count one since that's what you're saying the evidence hurts you on. No, I don't think he has to intend to rape at all under count one. Under count one, if we sensitize count one, if I simply take somebody across state lines against their intent, against their will, that's kidnapping. Well, it all bleeds into each other as far as the consent, the prostitution, and the rape, right? Correct, Your Honor. Okay, so for 2421, does the defendant have to intend, and I don't know why I'm really talking about that because you've conceded that one, but for that charge, does the defendant have to intend, before crossing the state line, not just to engage in sexual activity or hired sexual activity or anything else, but rape? Does that have to be in the defendant's mind before they cross the state line? It's a bifurcated, Your Honor. It's either for sexual purposes, prostitution, or to commit other criminals. I know that. Okay. I'm asking about the timing. Your Honor, I think that the, strictly speaking, and I don't think that's where we're at here, but I think, yes, the intent has to be formed before you commit the act, which is the transportation across the state line. But the issue here with regard to the count one and the prejudice that came in there when the district court excluded the impeachment improperly, Your Honor, was that being able to go through and impeach somebody is much stronger than the way that the district court required it to be done, which was by refreshing recollection because the purpose of impeachment was to discredit the witness, TV, and not to establish the facts in the dispute. And the district court got hung up on the idea that it was being offered for the truth, so to speak, or for substantive evidence and not simply for impeachment evidence. And the court was ... In our brief, Your Honor, we cited that the district court is not to protect the accusing witness from impeachment, but determine whether the jury had sufficient evidence to evaluate that under ... Evaluate the witness under Bindley. And the issue there was her statement, TV statement, didn't make mention of terms that came out and were argued in closing and on direct, good girl, that the handcuffs and the lubrication jelly, and these were all things that were not in the prior statements that impeachment could have brought out. And the issue here, Your Honor, is that it was a seven-hour deliberation. So clearly the jury between that and the jury question that came out regarding consent and how it came out, this was not an open and shut prosecution case that the jury bought hook, line, and sinker. And I am out of time, Your Honor. Thank you. Good morning, Your Honors. Counsel. May it please the court. I'm James Braun on behalf of the United States. The decision whether to admit or exclude evidence is generally left to the discretion of the district court. And here, the district court acted well within its discretion in ruling on the evidentiary issues that are raised in this appeal. The exclusion of evidence under Rule 412 of the victim's prior acts of prostitution, the admission under Rule 413 of the defendant sexually assaulted his daughter in the past, and the limiting of impeachment of the daughter based on vague and unfounded accusations relating to her mental health and supposed prior accusations of sexual abuse. First, under Rule 412, evidence that a victim engaged in other sexual behavior is inadmissible in a proceeding involving alleged sexual misconduct. And that's exactly what the defendant was trying to do here. Any cases with a conviction? No. Not that have been cited in the briefs, but this case wasn't about a conviction. And I'd like to address your question, Judge Phillips, about that, what the defendant argued in his motion in the district court. He didn't argue this as like a Rule 609 admission of a prior conviction. Well, nobody's saying that because it wasn't a felony, right? I don't know the answer necessarily. She – and what she had admitted in the interview is that she had a conviction. I can't remember if she got a conditional discharge or something like that. But there was no evidence proffered by the defense of any documents. He talks about documentary evidence. He didn't proffer any documents. It's – I believe all we have from the record is what the government put in its response to the defendant's motion, which was the victim had admitted during an interview that she had previously acted as a prostitute. That's all we have. So what the defendant asked for – And that did not get in the trial record, right? The – Did that get into the trial record? It did not get into the trial record, no.  It was all pretrial. Right. Right. And what the defendant had asked for in his motion is – We can go through every page in here, and we can't see anything about a conviction of Go One. Go One, also referred to as PL. Right. Correct. Nothing in there about her. No, because that was excluded under Rule 412 as far as the trial goes. Now, as far as the pretrial litigation, the defense, at page 2 of their motion, asked that the court permit the defendant to offer evidence that Jane Doe was a prostitute, that she had a history of engaging in the occupation of prostitution, and that the encounter that led to the charges in this case was the result of a solicitation for commercial sex initiated by Jane Doe. That's what he asked for, not to introduce proof that she had a conviction. And perhaps that might be different. That's not what he was asking for. Was the district court aware that there was a prostitution conviction? From the government's response, I believe the government just put it in its response that PL had admitted to prior acts of prostitution. I'm not sure if the government mentioned a conviction. But again, the defendant didn't put on any actual evidence. He didn't submit the discovery page where this is listed in a report. He just said what I read from the record. So it was very vague as far as what exactly the defense was asking for. But it was just to offer evidence that the victim had previously acted as a prostitute was the gist of it. And that's what Rule 412 excludes. And what the defense is arguing is that this was admissible to prove consent and that it was required under the Constitution. And in answer to Judge Murphy's question about whether it means that a prostitute can't be believed, it sounded to me like the answer was no, but once a prostitute, always a prostitute is essentially what it was being offered for. That's how it would show consent. And that's directly contrary to this Court's precedent and what the Court said in the evidence that the sex trafficking victim previously engaged in prostitution is irrelevant to whether that victim was coerced into working as a prostitute on a later date. Minor child, right? I can't remember the victim in that case. No consent possible. But essentially what the Court said is the fact that someone has acted as a prostitute in the past does not show, is not relevant to show that they consented on a later date. And that the Constitution doesn't require the admission of irrelevant evidence. And that reasoning applies here. Here's my problem and help me out. Is that it seems to me as I read the briefs and the record that I've seen that consent and was there a prosecution transaction in the works, even if it took a while before everybody, the two of them were comfortable, neither was a police officer or whatever. That was the game in this case, which is to say if the jury believed that this was a prostitution encounter, then I don't know how the jury would find kidnap, crossing the somewhere to consummate a transaction. And so it's supercharged, that question. It's outcome determinative, perhaps. And therefore, when he says constitutional basis, the exception under 412, I'm listening. Why shouldn't I be listening? Well, because again, in Palms the Court said that the fact that someone has acted as a prostitute in the past does not mean they've consented to act as one on this date. It's different if it's a child, though, right? No, it's not because they're talking about consent. A child can't consent. No, a child can't consent as a matter of law. Jane Doe one could have consented. Right, but what Palms is talking about is just what it says is that evidence that a sex trafficking victim previously engaged in prostitution is irrelevant to whether that victim was coerced into working as a prostitute on a later date. And the same reasoning applies here. The fact in what Rule 412 basically precludes is the admission of this type of propensity evidence, to say because you acted as a prostitute before, you must have been acting as one now, or that that is evidence that you were acting as one on this date. And as far as the Constitution goes, what the Court said in A.S. is that it talked about the class of cases where the Constitution mandates the admission of this type of evidence. And it says that there's two classes of cases, those where it shows motive to lie and those where it shows bias against the defendant. And it gives an example. It talks about the Tenth Circuit case in Platero where the defendant had proffered evidence that the victim had a sexual relationship with a third party because it showed the victim's motive to tell that third party that her sexual encounter with the defendant was nonconsensual. That's not what we have here. What we have here is prior acts of prostitution. That in no way shows that the victim had a motive to lie about the defendant or that she was biased against the defendant. And so the Constitution doesn't apply here in that context. And it doesn't show that she consented here. What the defendant was wanting to prove is that this act was consensual. He was allowed to put on evidence of that. The Court did not prevent him from putting on his defense. He was allowed to testify to his version of events that this was an arranged consensual sex-for-money exchange. And he was allowed to cross-examine the victim and ask her, did you agree to sex-for-money? She said no, but he was allowed to ask that question. He was allowed to put on that evidence of himself. What 412 precludes is the defendant to say, but you have acted as a prostitute in the past, haven't you? And try to imply that because she did it before, she did it this time. That's what's not allowed, and the Constitution doesn't require it. And unless there's any more questions on Rule 412, I would move on to the third issue. The defendant skipped the Rule 413 discussion, and unless the Court has any questions about that, the admission of the Rule 413 evidence, his argument is essentially that he wasn't charged with a sexual assault offense, and so therefore it's not admissible in this case. We have argued that what the Court should look at is the conduct under the Batten case, and the conduct in this case clearly involves sexual activity. And, yeah, 413 does say accused of, and 412 says involving. Accused of sounds like criminal charge. It sounds like it. I'm sorry. It sounds like? A criminal charge. It could be interpreted that way, but it doesn't need to be interpreted that way because accused can also mean something less formal. And as the Court said, the Seventh Circuit said in Foley, what the rules of evidence are concerned about is facts, not necessarily elements. And so you look at the conduct. And what Rule 413 also says, when it defines sexual assault, is an offense involving, and it lists the conduct. These offenses certainly involve that type of conduct. The purpose of the kidnapping was the sexual assault. The illegal sexual activity involved in Count 2 was the sexual assault. So the purpose of the kidnapping was sexual assault, you say? That was the government's theory, yes. I thought the government's theory was that the purpose of the kidnap, what happened with the kidnap, is that she was embagled and decoyed. Right. And what he says is it's prostitution, and the government went with that, too. It said you can convict on either basis, under 2421, either prostitution or a sexual assault. But what didn't get said, that I saw anyway, was that he had to intend to rape her before he hit that New Mexico line. Do you agree with that? Yes. That that's as a matter of law? Yes. And so if you have a consensual encounter, and it's a prostitution arrangement, which his own testimony made it sound like he was an old pro at that, as far as soliciting and picking up prostitutes, if that was what was in his mind, his intent to commit the sexual assault, the rape, really didn't happen until he got to New Mexico and was denied the prostitution. Isn't that right? Right. But just to be clear, the government's theory was that the kidnapping involved invagling based on the intent to commit a sexual assault. But why? What is the evidence for that, if he says that it was a prostitution arrangement? The evidence was the victim's testimony that there was never an arrangement to engage in sex for money. That she was just looking for a ride, and that was the understanding from the get-go. The only reasonable inference from that is that he had something else in mind when he then took her to New Mexico. And yes, in closing argument, the government said, even taking what he's saying as true, he's admitted to his guilt as to count two. But we still argue that's not believable. That's not a believable story. And so our theory stayed consistent, that yes, even if you believe him, he's guilty of count two. But here's the more believable version of events, and that is that when he picked up the victim for a ride, he knew exactly what he was going to do. And that involves both the kidnapping. I take it your point is that if Clay's testimony was the only testimony regarding Judge Phillips' question, then the conviction would not be appropriate. But if you consider the testimony of the victim, Do Juan, then there's a basis to determine that there was intent on his part to commit a rape before he crossed the state lines. That's right. And really then the jury is left to determine who it believed, and that's for the jury to decide. And I would also note that the defendant hasn't raised a sufficiency argument on appeal. Has not raised a sufficiency of the evidence argument as to either count one or count two. Now, as to the final argument that relates to the restrictions on the impeachment of the defendant's daughter, this morning my opposing counsel focuses on the prior inconsistent statement, but that's not properly raised in this court. That's not something that he raised in his opening brief. His opening brief focused on the restrictions related to the allegations of mental health issues, prior accusations of sexual assault, and the improper withdrawal of money. In his reply, he for the first time cites to the record where the district court limited his impeachment for prior inconsistent statements because it wasn't under oath. But even then, he doesn't really articulate what his argument is or how the district court, or how he even preserved it. Prior inconsistent statements, meaning the recantation? Meaning, no, no, meaning what she had previously told law enforcement about the defendant's sexual assaults of her. And it seems like he's saying that she hadn't previously told law enforcement the defendant had told her to be a good girl during the assault. But he did not articulate that argument in the district court, why it was appropriate, and he has not articulated that properly here before this court or shown why it's preserved. I see I'm out of time. Unless the court has any additional questions, we would ask that this court affirm. Thank you, counsel. You do have 12 seconds. We'd let you complete a thought if you have one. One question I have right off the bat is, did the district court know there had been a rape conviction or a prostitution conviction or not? Your Honor, in examining the record, that was not something that was ever disputed by the government. Disputed? Well, that didn't answer my question. Did the court know that there was one? I don't know, Your Honor. And you agree it's not in the trial record? It's not in the trial record, but the United States Attorney never disputed that at any point in time. It was always argued about whether the admissibility. Well, but what is disputed is whether you ever tendered a conviction or made an offer of proof of it before trial or during trial. Did you do that? There was a motion in the limit that was filed very early on, and that was denied. Did you ever at any time tell the district court in writing or orally or make any proffer of a conviction of prosecution or sex crimes by Doe 1? Your Honor, yes. I believe they cited, too, the fact that the government, in its interview, said that Jane Doe 1 said she had a conviction. Did you make a proffer of that, is my question, not what the prosecution did? Did you offer that into evidence at any time? In the motion in the limit, that's what they cited, Your Honor, was that evidence. I apologize, I feel like I'm going back and forth. That evidence being the conviction itself or just being that we want to stop any references? That the United States produced a statement from the interviewing agent that said that Jane Doe 1 had a conviction and that was what was relied on in the motion in the limit. And expressly stated so the district court understood there was such a thing? My position is yes, Your Honor, that was in the motion in the limit. It's document 37. So we just need to look and see. I believe that's clear in there, Your Honor, yes. All right, well, thank you. Your time has expired. Thank you, Your Honor. Counsel, we appreciate your arguments. The case is submitted and counsel are excused.